## In re TYRONE P.

### No. 2000–395–A.

Supreme Court of Rhode Island.

Dec. 17, 2001.

Frank P. Iacono, Jr.; Thomas J. Corrigan, Jr., Providence.

Marie T. Roebuck, Providence.

## O R D E R

Tyrone Powell (Tyrone) appeals from a decree terminating his parental rights to his son, Derek [1], based upon chronic substance abuse, unfitness, and abandonment.

This case came before a single justice of this Court, who ordered the parties to show cause why this appeal should not be summarily decided. After hearing their arguments and considering their legal memoranda, we conclude that cause has not been shown and proceed to summarily decide the appeal.

On March 15, 1996, Derek was born cocaine positive to Bonnie Clarke, who admitted to neglect based on her substance abuse problem. He was placed in relative foster care with the father's cousin, Tanya Collins, by the Department of Children, Youth and Families (DCYF). [2] Ms. Clarke identified Tyrone as Derek's father. Following Derek's birth, DCYF spoke to Tyrone's relatives in Rhode Island numerous times in an attempt to contact Tyrone and eventually learned that he was incarcerated in New Jersey. On October 17, 1996, Tyrone appeared in Family Court on a petition by DCYF alleging neglect of Derek, an allegation Tyrone denied at that time but later admitted on January 17, 1997, based on his then incarceration at the Adult Correctional Institute (ACI). Following his release in 1997, Tyrone again became difficult to locate despite diligent efforts to find him by a DCYF caseworker who had developed two separate case plans for Tyrone, neither of which he signed. [3]

On November 25, 1997, DCYF petitioned the Family Court to terminate Tyrone's parental rights to Derek. Following trial on the termination petition, a decree terminating Tyrone's parental rights was entered on February 8, 2000.

Tyrone, who is currently serving a six-year sentence for possession of a controlled substance at the ACI, asserts here on appeal that the trial justice erred in terminating his parental rights because: (1) DCYF made no effort to reunify the family or provide him with the services necessary to strengthen their relationship, and (2) abandonment can not be founded on his incarceration.

"[W]hen considering a petition for the termination of parental rights, the Family Court justice must find by clear and convincing evidence that DCYF made reasonable efforts to reunite the parents and children, and, that notwithstanding those efforts, the parents are unfit to care for the children." *In re Suebun V.*, 766 A.2d 939, 942 (R.I.2001) (per curiam) (citing *In re Ryan S.*, 728 A.2d 454, 457 (R.I.1999) (per curiam)). We accord great weight to a trial justice's factual findings, which absent record evidence that such findings are

---

1. The name Derek is not the child's real name and is used to protect the child's anonymity in this order.

2. The trial justice noted that Derek was doing well under Ms. Collins's foster care, and her home was pre-adoptive at the time of trial.

3. Tyrone requested a DNA test in October 1999 to confirm his paternity, and the test demonstrated that he is Derek's father.

clearly wrong or that the trial justice misconceived or overlooked material evidence, will not be disturbed. *Id.* at 942 (citing *In re Shaquille C.*, 736 A.2d 100, 101–02 (R.I. 1999) (mem.)).

In the record before us we observe more than substantial evidence showing that the DCYF caseworker who had been assigned to Tyrone diligently tried to locate him through an extensive parent search and by contacting his relatives. Tyrone acknowledges that the caseworker had given him her telephone number and had requested him to contact her upon his release from prison. Despite her efforts and those of DCYF, Tyrone never contacted DCYF or the caseworker.

At trial on the termination petition, Tyrone testified to "doing drugs basically all my life" and never seeking drug treatment. He denied that DCYF had requested him to obtain counseling for his chronic substance abuse. However, the record demonstrates that DCYF had made such requests and was prepared to refer him for in-patient drug counseling services at Talbot House and to arrange for visits with Derek. Additionally, the caseworker had prepared two separate case plans with the following objectives for Tyrone: (1) to be substance free; (2) to obtain and maintain appropriate housing; (3) to cooperate with DCYF toward reunification and maintain a relationship with his son; (4) to create a stable home environment for the family, refrain from illegal activity, and ensure appropriate medical care for Derek; and (5) to achieve appropriate parenting skills. The father did not sign either case plan.

We are satisfied that the trial justice properly found that DCYF had made reasonable efforts to reunify the family and provide Tyrone with the necessary services to strengthen his relationship with his son and that he was clearly unfit to be a parent by reason of his chronic substance abuse problem.

"Although this Court has stated that parental rights should not be terminated solely because of conviction of a crime and the parent's subsequent incarceration, a parent's imprisonment may be considered along with other factors in deciding whether a termination of parental rights is warranted." *In re Micaela C.*, 769 A.2d 600, 604 (R.I.2001) (per curiam) (citing *In re Frances*, 505 A.2d 1380, 1385 (R.I.1986)).

The trial justice's finding in this case that Tyrone had abandoned Derek was not based solely on Tyrone's incarceration. The record contains more than ample evidence disclosing that Tyrone did not attempt to establish any relationship with his son. Despite Tyrone having been incarcerated most of Derek's young life, Tyrone was free for several months in 1996 and 1997. During that time, he saw his son a total of three times, and two of those visits lasted for mere minutes. Tyrone provides no meaningful explanation for his utter failure to make any effort to contact DCYF or his son. Additionally, the trial justice did find that the father's lengthy sentence rendered it improbable that he could care for his son for any extended period of time. Based on all of this evidence, the trial justice appropriately found that DCYF had made more than reasonable efforts to reunify Tyrone with his son, and that Tyrone had abandoned Derek.

For the reasons above stated, Tyrone's appeal is denied and dismissed. The decree of the Family Court terminating his parental rights to Derek is affirmed, and the papers in this case are remanded to the Family Court.