In re BRIANNA D.

No. 2001–5–Appeal.

Supreme Court of Rhode Island.

June 3, 2002.

Frank S. Iacono, Jr./Thomas J. Corrigan, Jr., Providence, for Plaintiff.

Kelly Monteiro/Paula Rosin/Janice M. Weisfeld, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on April 10, 2002, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be decided summarily. The respondent-mother, Sheryl D. (mother or respondent), appealed from a Family Court decree terminating her parental rights [1] to her daughter Brianna D., pursuant to G.L.1956 § 15–7–7(a)(2)(iii) and (a)(3). After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are satisfied that cause has not been shown. Therefore, this appeal will be decided summarily.

---

1. The identity of Brianna's father is not known, and his rights were terminated by default on September 30, 1999.

When reviewing a decree involving the termination of parental rights, this Court examines the record to determine whether legally competent evidence exists to support the findings of the trial justice. *In re Jennifer R.*, 667 A.2d 535, 536 (R.I. 1995); *In re Kristen B.*, 558 A.2d 200, 205 (R.I.1989). We have long held that these findings are entitled to great weight, and will not be disturbed on appeal unless clearly wrong or, if in making those findings, the trial justice overlooked or misconceived material evidence. *See In re Christina V.*, 749 A.2d 1105, 1111 (R.I. 2000).

Brianna was committed to the care, custody and control of the Department of Children, Youth, and Families (DCYF or the department) on July 21, 1997, when she was three years old,[2] based upon mother's admission that she had neglected Brianna as a result of substance abuse. The department placed Brianna with respondent on the condition that she have clean screens and continue with drug counseling. Mother failed to abide by these conditions, however, and Brianna was placed with her aunt and uncle in May 1998.

Since 1997, mother has entered into five case plans with DCYF, each of which had the goal of either maintaining Brianna in the home or reunifying Brianna with her mother. Each plan required mother to attain and maintain a drug-free lifestyle through continued substance abuse treatment. As of June 1998, due to indications that she suffered from mental illness, mother was also required to cooperate with mental health services. Mother failed to complete any of the myriad of treatment programs set forth in these plans. Before her parental rights were terminated, mother's biweekly visitation with Brianna had deteriorated to the point that Brianna needed to be coaxed into attending these visits and, once there, was observed "directing" her mother when her mother would get distracted from what she was supposed to be doing with Brianna. Her aunt also observed that Brianna's phone conversations with her mother became more frustrating over time, often with Brianna attempting to avoid the conversation or hanging up on her mother.

The trial justice found that the department had established, by clear and convincing evidence, that mother was a chronic substance abuser, that she had attempted to treat her bipolar disorder with illegal drugs, and was not motivated toward recovery. He further found that DCYF made reasonable efforts to reunify mother with Brianna and that mother was unfit. On appeal, mother argued that the trial justice failed to consider evidence of the physical, psychological, mental and intellectual needs of Brianna, as required by § 15–7–7(c),[3] and that termination of her

2.  Brianna was born on September 15, 1993.

3.  General Laws 1956 § 15–7–7(c) provides:
    "(1) In considering the termination of rights as pursuant to subsection (a), the court shall give primary consideration to the physical, psychological, mental, and intellectual needs of the child insofar as that consideration is not inconsistent with other provisions of this chapter.
    "(2) The consideration shall include the following: If a child has been placed in foster family care, voluntarily or involuntarily, the court shall determine whether the child has been integrated into the foster family to the extent that the child's familial identity is with the foster family and whether the foster family is able and willing to permanently integrate the child into the foster family; provided, that in considering integrating into a foster family, the court should consider:
    (i) The length of time child has lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child; and

parental rights is not in Brianna's best interests.

▮ We have held that in order to disturb the basic security of a family relationship, § 15–7–7(c) requires a finding that the child "is likely to suffer physical and/or emotional harm." *In re Kristen B.*, 558 A.2d 200, 203 (R.I.1989)(quoting *In re Lester*, 417 A.2d 877, 880 (R.I.1980)). The first step is, therefore, a finding of parental unfitness. We note that mother does not challenge the trial justice's finding that she is unfit due to her chronic substance abuse, and acknowledges that once a determination of drug addiction is made, the state "shall", pursuant to § 15–7–7(a)(2)(iii), "terminate any and all legal rights of the parent." Section 15–7–7(a). Thus, the next step is to consider the best interests of the child, which will "outweigh all other considerations." *In re Kristen B.*, 558 A.2d at 203.

▮ However, a finding of parental unfitness is insufficient unless the agency can also establish that, "pursuant to § 15–7–7(a)(3), [the agency made] reasonable efforts to strengthen the parental relationship until a termination petition is filed pursuant to § 15–7–7(b)(2)." *In re Joseph*, 788 A.2d 475, 477–78 (R.I.2002). Whether the department's efforts are reasonable will be determined from the "particular facts and circumstances of each case." *In re Kristen B.*, 558 A.2d at 203. Over the several years that Brianna was in DCYF custody, the department provided mother with supervised visitation, money for a detoxification program and referrals for both substance abuse and mental health assessments. Since 1997, mother has been referred to Discovery House, King House, CODAC, Northern Rhode Island Mental Health (NRIMH), Butler Hospital (Butler)

and Talbot's Women's Day Program for drug rehabilitation and treatment for mental illness. Although the department is responsible for making reasonable efforts, DCYF cannot guarantee success and should not be burdened "with the additional responsibility of holding the hand of a recalcitrant parent." *Id.* at 204. We are satisfied that the trial justice was neither clearly wrong nor did he overlook or misconceive material evidence when he concluded that DCYF had made reasonable efforts to reunify respondent and her child and that mother was simply unable to comply with these numerous case plans.

This Court has held that the best interests of a child "involves the determination of the right of a minor child to reasonable care and maintenance, freedom from abuse or neglect, and the right to be given an opportunity to spend the remainder of his or her childhood in a family setting in which the child may grow and thrive." *In re Stephanie*, 456 A.2d 268, 271 (R.I.1983) (quoting *In re David*, 427 A.2d 795, 801 (R.I.1981)). We previously have held that children "are entitled to permanency; they should not have to wait for an indeterminate period of time to find out if their parents will successfully obtain and maintain a substance free lifestyle." *In re Eric K.*, 756 A.2d 769, 772–73 (R.I.2000). Moreover, a parent's genuine love for their child, or an existence of a bond between parent and child, is not sufficient to overcome the child's fundamental right to a safe and nurturing environment. *In re Rene B.*, 544 A.2d 137, 139 (R.I.1988); *See In re Christopher H.*, 696 A.2d 940, 943 (R.I.1997). Although we do not question the assertion that mother loves Brianna, we agree with the finding of the trial justice that the child's interest in a perma-

---

(ii) The reasonable preference of the child, if the court determines that the child has

sufficient capacity to express a reasonable preference."

nent and stable environment in which to grow is of paramount importance.

Accordingly, the respondent's appeal is denied and dismissed. The decree of the Family Court is affirmed and the papers in this case are remanded to the Family Court.